HON. JOHN G. HEIMANN Commissioner, Division of Housing and Community Renewal
This is in reply to your letter of April 1, 1977, requesting my opinion as to the validity, relative to Article VII, §§ 8 and 10 and Article XVIII, §§ 1, 2, 3 and 6 of the State Constitution, of a proposal to "federalize" certain public housing projects of the New York City Housing Authority. From your inquiry and after discussions by members of my staff with a representative of the New York City Housing Authority (hereinafter "the Authority"), the following facts have been ascertained.
The housing projects involved are presently owned by the Authority and will continue to be so owned. The State in years past issued State general obligation housing bonds pursuant to Article XVIII of the State Constitution and State Finance Law, § 60, which bonds are still outstanding. The bonds are full faith and credit bonds, not directly secured by project revenues. Proceeds of the bonds were used to loan money to various municipal housing authorities, including the Authority, pursuant to Public Housing Law, § 70 and for the purpose of constructing low income housing projects. Repayment of the loans is guaranteed by the appropriate municipality, in this case the City of New York, pursuant to Article XVIII, § 5.
In connection with the loans, the State, the City and the Authority entered into a "loan and subsidy agreement" pursuant to Public Housing Law, § 73 whereby, among other things, the State agreed to make annual subsidy payments to the Authority in an amount equal to 1% of the principal amount of the loan plus the amount of the largest annual interest payment, the Authority agreed to repay the loan to the State in annual installments, and the City agreed to pay a subsidy to the Authority "at least equal" to the State subsidy as required by Public Housing Law, § 73. Traditionally, the City subsidy has taken the form of tax exemption of Authority property as provided in section 73, but in addition the City has been paying the Authority's operating deficit as well. In the agreement, the project's revenues are pledged for the repayment of the loan and the faith of the State is pledged to the payment of the subsidies.
The annual State subsidies are paid from current Local Assistance Fund appropriations, not bond proceeds.
The Authority now proposes to issue its obligations to finance physical improvements to the projects in the nature of deferred maintenance and modernization to bring the State-aided projects in line with the physical condition of other Authority projects. The State periodic subsidy payments would be used as security for the repayment of the obligations and, in addition, their repayment would be Federally guaranteed. The Federal government would also assume the City's obligation to provide cash grants to cover operating deficits and the Authority would receive from the Federal government in annual payments the amount necessary to repay principal and interest on the State loan, thus adding a Federal guarantee as security for the State loan.
In responding to your questions as to constitutionality, I am assuming that the facts are as above stated and this opinion is based upon that factual statement.
Public Housing Law, § 76 provides:
 "Payments under any contracts for periodic subsidies by the state may be pledged by an authority as security for loans obtained from any source for the project to which such periodic subsidies relate."
That section authorizes the pledge of subsidy payments to the repayment of the Authority's obligations issued for modernization and rehabilitation of the projects in language so clear as to need no further construction. However, it is significant to note that that section has been in the law unchanged since 1939 when the Public Housing Law was enacted to implement Article XVIII. The constitutional history of the Article indicates that the drafters thereof contemplated that, from time to time over the 50-year probable life of the projects, housing authorities would find it necessary to borrow to finance improvements. In a memorandum to the delegates at the 1938 Constitutional Convention, the then New York City Corporation Counsel, Paul Windels, stated as to one of the objectives of the housing article (Revised Record, Vol. II, p. 1549):
 "The second objective is to protect the capital investments of public funds in the older areas of our municipalities, particularly New York City, by modernizing low-rent housing and rehabilitating related neighborhoods." (Emphasis added.)
The periodic subsidies are specifically intended to "assist in achieving and maintaining the character of a project" (emphasis added) (Public Housing Law, § 73; note also Article XVIII, § 10 which authorizes the State to engage in "the building and operation of low-rent dwelling houses for persons of low income * * *" [emphasis added]).
Low-rent housing for persons of low income is one of two purposes for which State loans and subsidies are authorized by Article XVIII, § 1 outside of the restraints of Article VII. The purpose of periodic subsidies to the Authority's projects has been and, under the present proposal, will continue to be to maintain their character as low-rent projects. This purpose is in no way vitiated by the fact that the State's contract to pay subsidies may be pledged as security upon which the Authority may from time to time borrow. Consequently, the purpose of Article XVIII will continue to be fulfilled under the proposal now under consideration.
In reply to your specific questions, it should be noted that Article VII, §§ 8 and 10 both speak as of the time a State indebtedness is created. Article XVIII is, of course, a specific exception to the gift and loan of credit provisions of Article VII, § 8 and since the State debt when created was created for the purpose of Article XVIII, it was specifically constitutionally authorized and would remain valid regardless of future disposition by the Authority of the projects, although under the proposal here considered the projects would still be within Article XVIII purposes. I, therefore, conclude that the validity of the proposals here are governed by Article XVIII and that Article VII, §§ 8 and 10 are not relevant.
As to the remaining questions, it must be borne in mind that no new State debt will be created, that the Authority is statutorily authorized to pledge subsidies for the repayment of loans from other sources, that the Authority's promise to repay the State loan will remain in effect, augmented by the Federal Guarantee of repayment, and that the modernization of the projects is within the purposes of Article XVIII. I conclude, therefore, that the proposal as presented and as described above will not violate Article XVIII, §§ 1, 2, 3 or 6 of the State Constitution.